Yves Bouvier versus Adelson et al. May it please the Court, my name is Daniel Levy and I represent Mr. Bouvier and MEI before the District Court and on appeal. The present state of affairs with the litigation going on outside the United States is that the Singapore Court of Appeal has accepted Mr. Bouvier's argument that Singapore is not a convenient forum, there will be no litigation going forward in Singapore. And they concluded their opinion saying, in light of our decision on forum non-convenience, it is now for respondents to choose their forum. That's at paragraph 125 and 126 of the Singapore Court's opinion which was submitted by the Appellees in their 20HA letter. In their 20HA letter they said that the Appellees will now pursue damages against Bouvier in some other forum. Mr. Bouvier, sitting here today, has no idea what forum that will be. They have no pending claim for damages anywhere in any litigation going forward. The Monaco proceedings are ongoing though, aren't they? They are ongoing. You argue that because he's relinquished a claim for damages there that the 1782 production can't be for use in the Monaco proceedings, right? Correct. So he has no pending claim for damages. I don't understand why that is necessarily so, why a claim for damages needs to underlie a 1782 claim. And the absence of damages means necessarily that the requested documents wouldn't be for use in the Monaco proceedings. We don't argue that in order to obtain 1782 relief, an applicant must have a claim for damages. They must, however, be seeking some form of relief. And in this case... Well, where does that come from? That comes from KPMG and Meese where this Court has held that in order for the discovery to be for use, it must be employed with some advantage or to increase the applicant's chance of success. The words with some advantage really don't necessarily imply a form of relief, particularly in a civil law country, right? They are, in fact, people with a formal role in the Monaco proceedings. They surely are. They're civil parties. They can submit material to the Monaco judge. But what that means is not that they have... The additional words that the Court has used in Meese and KPMG is to increase their chance of success, which does imply... And since the way the Monaco procedure operates is they can be heard in that action and they have a formal role, they have an interest in his being found liable, convicted, whatever, in the Monaco procedure and they want to put forward documents that help achieve that goal. Why isn't that a reasonable way to look at this? Because it doesn't... The only unique interest... Their interest is identical to any other person's interest. So what? There are often cases in which parties have overlapping or even identical interests. So what? They have an interest and the Court will hear them. For sure, they are interested parties and they may submit information to the Monaco judge, but their ability to achieve success is no different than anyone who has a claim that someone else committed some crime because they're not seeking any particular remedy. They're not trying to remedy... I don't follow that at all. Let's flip it all around, right? Let's imagine that 1782 was a French statute. You had a French individual who was the victim of a crime here and wanted to proceed in France under the French 1782 in order to make the most persuasive case as a crime victim on the sentencing of a defendant in a US District Court. No different, right? In a US court, that crime victim would almost by definition be entitled to some form of restitution. Maybe, maybe not. What if there was no actual loss? You only get restitution for actual loss, but you could be a victim who they intended to do whatever harm to. Intentional harm obviously wouldn't be a form without actual loss. Crime victims are heard, in short, whether or not they have a claim for restitution. They have a right to be heard in a US court. In Monaco, they are civil parties. They can submit evidence to the Monaco investigating judge, but it's not for use because there's simply no measure of success that they can obtain. They have given up any remedy that they could otherwise seek, and the only harm that they have advanced is... The measure of success that they can obtain is an outcome that they view as more favorable, all things considered, to their position, whatever it may be. But that's... No different from a crime victim here who shows up at sentencing and says, don't give this guy 20 years, give him life. But they have not advanced that as an argument in the Monaco proceeding, that they want to see Mr. Bouvier convicted. And by the way, there are entities that are... Why are they being heard in Monaco? Because they originally... What's the Monaco court interest in hearing them? Because they caused Mr. Bouvier to be arrested, and as part of the Monaco criminal case, they were able to insert themselves as civil parties in order to seek damages. I just think that your argument is unpersuasive because they are before the Monaco court, you've agreed to that, and the Monaco court will allow them to put on evidence. Their interest is they want him found to have been a fraudster. That's their interest because they are the fraud victim. I don't understand how that cannot be a cognizable interest. It may make them interested persons under 1782, but there's an additional requirement under 1782, which is the discovery to be obtained here must be for use. What's the problem? I just don't understand. There is no use to be had beyond simply obtaining damages. That's the only remedy that they have. Aside from that, Mrs. Lincoln, how would you like the show? That's the use. You can't say aside from that. It is because they've waived their claim for damages, and they're no longer seeking damages. And so there's simply nothing that they can obtain other than some form of justice, which is what they claim they want, but that's not sufficient to distinguish them from anyone else who may say that there's some harm that has occurred. Can you talk about both the fact that the court is going to allow the materials to be used in France and your challenge to the fact that it did not limit it to items physically within the United States? Of course. Thank you, Your Honor. So the French proceeding occurs two pictures, two works by Picasso. The Sotheby's confirmed that they had one document relating to those two pictures. The appellees already had it. Judge Furman granted the petition in May of 2016 with respect to that discovery alone. Later, when he granted the petition in October, he ruled that the Paris proceeding was no longer relevant. And then later on, he allowed the appellees to use discovery relating to other pictures in Paris, and we submit that that was error. Do you see any textual basis for your argument that for use in a proceeding must be shown with respect to every possible use that a produced document might have to the applicant? Absolutely. Yeah. The text indicates may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding. And if it was go ahead. That suggests that it only comes into his possession if he can satisfy that. If we were to find that he satisfies it with respect to Monaco, why is there any right to limit where he can use it? I mean, the presumption in the law is that when someone is in lawful possession of evidence, they can use it wherever. So if it comes into his lawful possession because they satisfy the requirement of the statute with respect to Monaco, why should there be any limits placed on it? Because this Court's extensive body of 1782 jurisprudence looks at individual proceedings in isolation. And if it's the case that someone could— The use requirement exists in order to ensure that you only get it if you satisfy use. In my hypothetical, they're going to get it because they satisfy it with respect to the Monaco proceeding. Now you want to limit them as to where they can use it. I mean, there's precedent that rejected that when the other use was a U.S. proceeding. So I understand that's not a foreign proceeding. But the statute doesn't seem to be a here's where you can use it statute. It's a statute that requires use to get it. If they get it for Monaco, why are we concerned after that? Well, firstly, because in Singapore there is going to be no more litigation. Same with France. Fair enough. Well, the discovery is entirely irrelevant to the French proceeding, and therefore— That's a different issue. So you're arguing relevance. I perceive another problem with your argument on this. The last or the penultimate sentence of 1782A says that to the extent the order does not prescribe otherwise, Now, it's almost too obvious to state that in the absence of a protective order, which can be granted, generally speaking, only on a showing of good cause, documents produced in discovery in a federal civil proceeding are fair game for whatever use the litigant who gets the documents wants to make of them. But that can't be the manner in which the Court is interpreting the text of 1782 because it only applies the federal rules of civil procedure as default procedures, absent a court order, right? The prior sentence of 1782— Go ahead. The prior paragraphs of 1782 says the order may prescribe—excuse me, the prior sentence of 1782 says the order may prescribe the practice and procedure, which may be in whole or in part the practice and procedure of the foreign country, the international tribunal. So it can't be that the federal rules of civil procedure govern in all cases. That prior sentence doesn't know you at all. For sure it does because the appellees have said that the federal rules of civil procedure should govern, in all cases, how discovery obtained under— To the extent that the statute prescribes otherwise. And the sentence you read us doesn't speak to any limitation on use in other tribunals besides the one that supports the 1782 order. Except that it does in the sense that it does not necessarily say—it does not remotely say that 1782—the use of 1782 discovery derives entirely from the federal rules of civil procedure. If it is silent on that question, then the next sentence is, to the extent it does not prescribe otherwise, the rules of civil procedure apply. Correct. It just—it simply describes—it simply sets out default procedures absent some other court order and the other court order—or the other order that the court may enter is virtually limitless because it may adopt the procedure of a foreign court. I did want to— I have a question for you with respect to the materials coming from abroad. Assume, as I ask you this question, that we find that the order is supported in this case. Why isn't this like a subpoena that we—if we have jurisdiction over the party, we allow—we require the party to produce relevant documents wherever it's got them located? That's federal rule of civil procedure sort of jurisprudence. And here, every court in the southern district except one, the one relied upon by the district court, that has ruled on the issue of whether 1782 reaches documents stored outside the United States has said that as a matter of the legislative history and text and purpose of 1782, it does not reach documents outside— So if you could show that all the documents were abroad. But we are in one of these situations where, you know, some of the documents are here, some of the documents are there, some of the documents are in cyberspace. Why isn't this analogous to a subpoena that tells a party in possession of certain documents, produce them, we don't care where you've got them? Because the legislative history of 1782, this court's suggestion in Sario that there's good reason to believe that 1782 does not reach documents located outside the United States, and the statutory scheme. The courts that have ruled— There's no holding by this court. You've got, at best, a split in the southern district. You've got contrary decision in the 11th Circuit. Your summary of the state of the law on documents outside the United States, I suggest, is perhaps not accurate. And in any case, look at the chaos adopting such a point of view would create by creating incentives for American companies and American citizens to hold materials offshore to keep them beyond the reach of 1782. Moreover, the nightmare in dealing with the question of what is the situs of an electronic document. I mean, this is just—I have a lot of trouble. Am I correct, though, with regard to the record, that the record is not clear about where the documents requested of Sotheby are located, and that the district court made a determination, which we would have to find is clearly erroneous, that based on the representation of counsel that the relevant documents were here. Sotheby's did not object to producing them, and he didn't really get into a detailed explanation. He called the question—he said the question seemed academic based on this record. Isn't that correct? The district judge did use the phrase seemed academic and didn't make a factual finding on this and relied solely on Sotheby's silence. But I think in order to grant the relief requested by appellants, the court would not have to find that this was clearly erroneous. We submit that the law is that 1782 does not reach documents located outside the United States. Why should we reach that question at all with respect to your appeal? These are not your documents. They're Sotheby's documents. You have no privacy expectation with respect to them. Sotheby's tells us they take no position on this question one way or the other. It doesn't seem to me that this is a case in which we should be hearing you about this. For sure that we submit it's perfectly appropriate for Mr. Bouvier to raise these questions because, as he articulated before the district court, he does have confidentiality interests. Many of the documents were governed by foreign law, contracts between Mr. Bouvier and foreign subsidiaries of Sotheby's. So the havoc that would ensue relative to determining where the documents are, the point that Your Honor made. What document would be subject to nondisclosure that Sotheby's has? The contracts themselves, for example. They all have confidentiality obligations in them of various sorts. Some are governed by you. Did that argue to the district court? We did note to the district court that foreign law bore on the question of Bouvier's confidentiality rights with respect to these documents. Are we talking about foreign blocking statutes or are we talking about a contract that might, for the sake of argument, have a Kazakhstan governing law clause? Both, in this case. We argued both. That contractual confidentiality obligations and foreign data protection statutes, what Your Honor referred to as blocking statutes. A compulsory process always trumps a contractual agreement between two private parties, does it not? In a standard Federal Rules of Civil Procedure, it might. But here, remember 1782, the purpose of 1782 is to promote comedy and the respect for foreign courts. And so if U.S. courts, before whom the main dispute is not pending, are overruling the law of some other country because they want documents to be produced under 1782 to be used in some other country, it does not promote the interests of 1782, which is— Congress has the obligation and takes no position on it. To the extent Your Honor— But there are Mr. Bouvier's rights. Well, let me get to that. Fair enough. The contracts before the district court to prove that they have these kind of agreements and that they're subject to these limitations. You could put it before the court ex parte and in camera. We didn't, but no one contested that— What basis is there for this? Mr. Bouvier said it and no one contested it because it is incontestable that the contracts are— I don't know how it's incontestable in the absence of seeing the contract. And Sotheby's, who is the other contracting party, does not support you because they take no position on this. Now, you may very well have an argument in either the Monegasque or French courts that the materials cannot be used because wherever they were, they're subject to these limitations. But I'm not sure why, unless you make a greater showing than you have, you have a conclusory assertion that they're subject to limitations. I'm not sure that that satisfies your burden. It was a conclusory point, and no one contested it, and it is not contestable. The contract— Why not contestable? Because the contracts have a confidentiality obligation in them. That's like somebody saying, you know, I can't be convicted because I didn't do it, and I say so. If the court wants us to submit some of the agreements under seal to this court, we will happily do it. This is an appellate court that decides cases on the record that was made in the district court. We're not going to have a factual hearing, at least as far as I'm concerned. I was responding to Judge Radji's suggestion. I didn't support this in the district court either, and I'm not surprised because this is the very document you don't want to have see the light of day. But— If I could just refer back to sort of the current state of play in Monaco, and if the court's not entitled to reverse the grant of relief, we submit that the court should remand in order to determine what proceeding the appellees are going to pursue their damages claim in because we submit that that's the only form of use, a mere interest in seeing someone convicted on these facts. Again, we're not talking about some other case. Your support for that in a case in which the court, the foreign court, has given them a recognition as a party in the litigation is what? They've been recognized to have the ability to submit evidence in the proceeding, but that does not mean they have an interest in the outcome of the proceeding because there are no pending claim for damages. We would submit that now the defendants, the appellees, are confronting a choice. They have no claim for damages in Monaco, and they've said they're going to pursue damages, and sitting here today, Mr. Bouvier has no idea where that's going to happen. Thank you, Your Honor. May it please the court, this is a perfect case for 1782. It's right down the strike zone, right in the wheelhouse, and it has some aspects of it that make it better than other cases, and there are aspects that we haven't talked about. The documents have already been produced. They've already been used in the foreign proceeding, and the district court put together a very careful protective order that deals with the issues of confidentiality that also deals with the potential use for other proceedings. Section 5.2, page 386 of the appendix, actually says that if we want to use those documents in another proceeding, we go back to the district court and make an application which would be similar to another 1782. So those facts alone make it uniquely good. Let me be sure I understand you. All the documents that were sought from Sotheby's have been produced to you by Sotheby's? Yes, they have. And used where? In Monaco. What happened was there was about a month between the middle of November and the middle of December when there was only a stay as to the use of them in Singapore and in France. This case is all about the clawback that your adversary is looking for? I believe that's so because everything has been done, and then this court in December 13th issued a stay, so nothing went on beyond that. But if we lift the stay, what are you going to try to do? The documents will be commented on and talked about in Monaco, and in Paris in that proceeding. Beyond that, we have no right under the protective order to use them. We would have to go back to Judge Furman and make an application if there is another proceeding. Singapore is out of the question now, although it's not dismissed. It stayed depending on what happens. But if and when there is another proceeding, and if we want to use the documents, we would make an application to Judge Furman. So the piece that is not moot, if any, is exactly what? If I understand you correctly, it's moot as to Monaco, is it not, because you have the documents and you have used them? Yes, and that's part of our problem too in terms of that. We should, though, the district court should be affirmed so that we have the right to apply to the district court if we want to, to use it in other proceedings for other purposes. So the piece that . . . And in Paris. Okay, Paris. I was going to get to that next, but I think I understand Paris. So Paris is at issue, and the question of the protective order, insofar as it may relate to other cases, is that alive? You're not . . . It's alive. Is anybody appealing from that? No. No, it's not an issue on the appeal. Right now the protective order does not allow you to use them in any other proceeding, right? You are allowed to use them in three proceedings. Correct. So you would need to go back to the district court, and since that seems to be, whether you'll ever do that, seems to be speculative, I don't know why we should rule on something that's otherwise moot. So, I mean, I think you better tell us why France is still a viable matter in dispute between the parties. That criminal proceeding is still going on. It's in the investigative stage, and our clients would like to use those documents there. How are you going to use documents about our transactions other than the two that are the subject of the France proceeding? I'm very happy you asked that question, Your Honor, because Mr. Bouvier had made his own 1782 application to Judge Cote, and asked for everything as well for the Paris proceeding, so that there is an element of estoppel involved here. What was he given? He was given whatever was called for. There was a negotiation with the judge. There was one particular transaction that he was interested in. He was only talking about an art dealer here who knew and had information and took a deposition of him. Are those all related to the two transactions that are the subject of the French proceeding? No, I don't think so. I don't think so doesn't help us. I mean, if you're able to say to us, look, he's put evidence in in the French proceeding about other sales and other transactions, and here's the evidence of that, that's one thing. But I don't know that that was apparent to me from the record. Part of it is that not everything is public in these investigations, and we don't know everything. But more than that, we're talking about a fraud. Let's go to my question. What are you going to use, evidence that pertains to other transactions, how are you going to use that in the French proceeding? To show the nature of the fraud, how it was accomplished, how it works, the state of mind, the whole procedure. Is the French action about fraud or is the French action about theft? I think that there is a very thin line between those two in the context of what we're talking about. There are, I think, two Picasso paintings. It's a descendant of Picasso who says the particular paintings were entrusted to Mr. Bouvier that they got out of his hands into someone else's hands, whether that's a combination of fraud and theft or one or the other. You were sold these paintings, right, I mean your client, and represented as if they had come into the hands legitimately. Correct. Now the other artwork, there's not a question of whether Mr. Bouvier had a legitimate claim to it, but that he represented to you that he had purchased it for a higher price than he had. Correct. Okay. So what are you going to argue to the French court about these other transactions and how do we know you are going to be able to use them? That is part of a pattern, that this is the way the man operates, that it is a scheme that has many aspects and dimensions to it. It's 404B evidence. Is that, that's the essence? Yes. And we have reason to think the French court will take that? Yes, absolutely. Based on, I mean, again, I'm looking for where in the record we have that. That's not in the record. There are conversations between counsel for the various parties. Typically you don't have that. Typically when it becomes relevant as to what would come in in the French court or court of another country, is that the party resisting disclosure endeavors to show that the country in question would not hear the evidence. The party seeking disclosure typically prevails on that element in the absence of proof the foreign court wouldn't hear it. But let me approach this mootness question in a slightly different way to make sure I understand it. Let's start by putting France to one side, okay? And I'll come back to it. If we concluded that it's certainly moot as to Singapore because that's history. You say it's moot as to Monaco because it's already been used. Now, typically what would happen if that was all that was involved is that we would, I think, vacate the judgment appealed from as moot and dismiss the appeal, right? No, Your Honor. For this reason, because of the existing stay, we have not been able to utilize. Be clear about what you mean. A stay from this court? Yes. In December, this court issued a stay of the district court. I understand, but I just wanted to clarify as between Judge Furman's order, restricting you from using them elsewhere, and the stay by this court. But if this court, if all that was here was Monaco and Singapore, and we concluded that it's moot for the reasons I just adverted to, the stay would fall with the dismissal of the appeal on grounds of mootness, and the order appealed from would be vacated, and the restriction on use elsewhere would fall also because he didn't appeal from that, and that's the way it would go. Isn't that right? If there is no restriction on us using the materials, that would be fine. You would be a happy camper. Yes. And since he didn't appeal, he would be an unhappy non-appellant. Okay? So now let's get to the French proceeding. The only thing stopping you from using them in France is Judge Furman's order restricting you from using them without his permission anywhere else. No. What's stopping us in France is the stay previously issued by this court in December because Judge Furman did allow us to use it in the three jurisdictions. Ah, okay. He said Monaco, Singapore, and France were okay. So why isn't the whole thing moot? Because he didn't challenge Judge Furman's order restricting to the three, unless I'm misunderstanding something, and the whole case goes, doesn't it? That would be fine. That wasn't my question. I know it would be fine. I'm just trying to work through the logic. Yes. There's a question on the France proceeding. I understood it to pertain to whether he waived that argument in the district court, right? Correct. Okay. And that was because the district court thought his failure to object at the October 19th conference or in the initial round of briefing waived his ability to raise it. He did try to raise it after that. Right. And the district court was not persuaded. Okay. Now, is it your understanding that this appeal does challenge the district court's allowance of the use in both France and Singapore? It's not just limited to Monaco, right, the appeal? That's what the brief for the appellant says. Right. So now we would have to consider whether he can appeal it or whether he waived it. So that's the first question, and then there would be the merits, right? Correct. Okay. Correct, Your Honor. Your Honor. But what we're really, well, I see the red light if there are no further questions. Let me let you conclude. We gave your adversary extra time. We satisfy the three statutory conditions. We satisfy the four intel discretionary conditions. And this Court is wary of second-guessing district court judges' weight given to those factors. And I think even the most recent case that Your Honor, Judge Raju participated in, in February, points in the direction, Your Honor, on extraterritoriality, I don't think there's anything in the record at all that justifies bringing it up here. Let me ask you, I mean, if all the documents were in a foreign country, if you went to Sotheby's and asked them for all the records they had kept in England, 1782 the appropriate vehicle for that? Yes, under the analysis in comparison to the Federal Civil Procedure, Rule 45, and the general notion that somebody has to produce documents that are within his possession. Right, but the rules of civil procedure are governing, in the main, proceedings in our court. Now you've got a French action, and instead of going to London and getting a British court to give you the documents from Sotheby's, you're taking advantage of the fact that we have personal jurisdiction over Sotheby's, and this country, with no interest in this litigation, would order Sotheby's to get their British documents and give them to you. Is that how you understand 1782 operates? Yes, Your Honor. And what's the basis for that? Because there's some language in cases that suggests that that's not where it operates. That's not how it operates. I think some of the points that Judge Kaplan brought up in terms of cyberspace. Well, that's different. I'm suggesting, I asked you a question about we know they're all in, you know, the files in London. You think 1782 lets you use a United States proceeding to get those documents. Yes, because of the twin purposes of 1782 in terms of the policy, that we're supposed to cooperate with litigants from foreign proceedings, and the hope is that the foreign courts will do the same to litigants here when they have to go to a foreign court. Is there a risk that the country which has, we'll assume in my hypothetical, all the documents will be aggrieved by the fact that a U.S. proceeding is the way that they're being obtained for use in a French court rather than their own proceeding? That's a theoretical possibility. If it occurs, then the courts can deal with it. That's not something that's on this record or has happened in other cases. And it isn't it also the case that it would have been a very simple matter for 1782 to have been drafted in such a way that would read essentially as follows. The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce any document in the United States within his control, and it doesn't say that. So this is one of the lacunae of 1782, and the default position is Rule 45 and the rules of civil procedure generally. Thank you, Judge Kaplan. The court should be affirmed. Mr. Levy, you do have some rebuttal time. Why don't you start by telling us what the state of play is in Monaco? Well, your adversary suggested that's moot. It's not moot at all. Tell us why not. So the appellees are civil parties there, and the Singapore court has directed them to choose their forum. They have waived their claim for damages in Monaco, and as a result, if they want to continue and seek damages against Mr. Bouvier, they're going to have to go somewhere. That's the damages argument on use, but my question to you is to the extent the documents have been produced and are now before the Monaco court, what relief do you want from us? We want the appellees to be precluded from using them any further. In Monaco? Correct. And they're before the Monaco court? They've been submitted to the Monaco court, but obviously submitting documents to a judge and being able to advocate on the basis of those documents what they mean and what conclusions should be drawn is an entirely different matter. But back to the point about for use, if the court looks at the Singapore court of appeals decision from some weeks ago, what it says is Swiss law applies to this dispute, and the Swiss forum is available. Singapore action was an action for damages, right? Correct. So the court with the damages action is saying we're not the right forum. If you want damages, go pick someplace else. It doesn't say you can't be a party in a different capacity in other actions, and that's what we've got. It absolutely suggests that if the appellees go to Switzerland in order to seek damages, that Mr. Bouvier will be well within his rights to start this all over again because they will have actions pending in Monaco and in Switzerland. So what? And how does any of that limit our 1782 decision? Because the Monaco proceeding is sort of hanging on for dear life because the appellees cannot get damages in Monaco, and they're going to have to go somewhere. And if they go to Switzerland, Mr. Bouvier is going to argue you can't proceed in both Monaco and Switzerland, and as a result, you shouldn't be able to— Why is that? I mean, the Monaco proceeding is a criminal proceeding against him. Why can't they seek damages in some other forum? Because Mr. Bouvier will argue that there's another action pending. They are civil parties to the Monaco criminal proceeding. I know that seems like an odd bird for a U.S. lawyer, but that's the manner in which the Monaco proceeding allows them to proceed. How is that any concern of ours if Mr. Bouvier argues that in Switzerland and the Swiss either agree with him on the merits or view the fact that he argues it as conclusive in and of itself, the Swiss court will do whatever it thinks is appropriate? Correct, and the point is that the uncertainty surrounding the appellee's ability to proceed in Monaco, it's quite obvious why in the appellee's 28— What is that uncertainty? The uncertainty is they will not be able to proceed in two courts in effect the same case at the same time. Other than the fact that you say so, what supports that view? The international law doctrine of lease alibi pendants, which is cited in the Singapore court's opinion in paragraphs 125 to 126, and they say Mr. Bouvier remained— I suppose the Swiss court takes a different view of that. If they do, they do, but the point is the ability of the appellees to proceed in Monaco is highly dependent on going somewhere else, and if they go somewhere else, they will— They just don't follow that. They have—they're not seeking damages in Monaco. They want damages. They're going to have to go somewhere else. They've said in their 28J letter they have to go somewhere else. So— Well, even if they do that, we have that circumstance, but that's not the circumstance we have today. The circumstance we have today is there's a proceeding in Monaco. They have the documents. They've put them to the courts in Monaco, and I'm not sure what relief you want. You say prevent them from arguing about them in Monaco. We want the court to reverse the district court's order, but if the court doesn't, then we submit that the court should remand— You're leaving your cases in controversy, and this case is about whether or not Sotheby should produce the documents to the plaintiffs or to the victims. They've done that, and the victims have put them before the Monaco court. I'm hard-pressed to know what you're asking us to do. The 1721 order has not only been satisfied, the documents have been used in the farm proceeding. Well, they've been submitted, and now the appellees want to advocate on the basis of those documents, and they cannot do that given the court's stay, and we submit that they shouldn't have been obtained in the first place, and therefore that they should no longer be able to use them anywhere. May I just— Whatever happens when we decide this appeal, the stay is history, the stay by this court. Correct. Because it's a stay pending appeal. Correct, but the relief that the court can grant is to— But that brings me to where I wanted to go. Fair enough. We don't hear an initial application to now make a further order about what they may or may not do in the Monagas court, can we? You might have the right to go back to Judge Furman, maybe, and ask him to enjoin them from speaking about the documents in a court in Monaco, and if you lose, maybe you'll come back up here, but we don't do that in the first instance, do we? We don't have any authority to do that, do we? If the court is not comfortable deciding the sort of further limitations, then that is the reason that we ask for an alternative form of relief, which is to remand. The appellees have said they're going to pursue damages, and we don't know where, and that's the reason we asked the court— Did Sotheby's turn them over in this litigation? At what point did Sotheby's comply with the order? Approximately a month after the court entered its order granting the petition, because that was when the protective order was largely resolved. And what were you doing at that point in terms of precluding Sotheby's from complying with the order while you challenged it? We were engaged in discussions with both the district court and the parties about the nature of the protective order. So you never sought a stay from the district court? No, we did, a stay pending appeal. We absolutely did. After or before the documents were turned over by Sotheby's? Before. And what happened? The district court denied our stay pending appeal, and we immediately sought emergency relief from this court. The court granted it with respect to— And what, in that few days Sotheby's produced the documents and they went over to Monaco? Absolutely. And I can see why the Appellees would want to make immediate use of it before this court had a chance to rule. If I could just very briefly— Did the prior panel know that Sotheby's had turned over the documents already? I believe that in connection with the argument on the stay, the Appellees' counsel indicated to the panel that the documents had been produced. If I could just clarify, there was some question during Mr. Kornstein's argument about the nature of the Paris proceedings, and I didn't want to— Please address the question. Thank you very much. We argued before the district court that the documents concerning pictures other than the two at issue in Paris were irrelevant, and therefore they could not be used in the Paris proceeding. When did you argue that? We argued that all along before the district court. All along? The district court said you didn't argue it on October 19th or before then, and that's why the court thought that you had waived the point. Tell us why that's error. Judge Furman entered his order permitting the documents to be used in Paris on November 1st, I believe. Several days before, we wrote to the district court, Petitioners should under no circumstances be permitted to use any discovery obtained as a result of the subpoenas in the Paris proceedings. It's at page 8366 of the appendix. Try to stay with me. I'm with you. It was your failure to speak to any objection on October 19th or before that was the basis for the district court finding that you'd waived the objection. Why is that conclusion error? Because prior to the district court's entering the order, we made this absolutely, exactly the argument that I just articulated, that Paris is totally irrelevant. In November? No. After October. Did you ever raise this before October 19th? And if you didn't, what's the justification? Because the district court thought you should have, and that your failure to do so waived it. In the judge's October 5th opinion, Judge Furman in footnote 2 said the Paris proceeding is no longer relevant. No longer relevant. And he pointed to his having granted relief with respect to two pictures. But at the same time, it declined to limit the reach, and declined to limit the use of the discovery to the Monaco proceedings. That's at page 7 of the special appendix. Correct. So in October, you knew that it was not going to limit the use to the Monaco proceedings. Which is exactly the reason that before the court entered an order permitting the documents to be used in Paris, we wrote to the judge and said, Petitioners should under no circumstances be permitted to use any discovery obtained as a result of the speediness in the Paris proceeding. Why did you raise it in the October 19th proceeding? Because what the judge was asking us was, forget what arguments you may have made. I'm going forward, and I've ordered the discovery, and you can reserve whatever rights you would like on appeal. And so we said, in light of what you've just told us, which is you're granting the discovery, we have to deal with the parameters that the district court has set out. But when a district court is made aware of the party's opinion before entering the relevant order, the party has not waived the argument. It's page A366 of the appendix. I did want to make sure that the court understands what Mr. Bouvier did in connection with Paris. We did seek relief under 1782. We obtained relief with respect to one painting, a Modigliani painting from Judge Cote. It has no relevance to the Paris proceeding, and we did not use it in Paris. So Mr. Kornstein's argument about what Judge Kaplan, I think, aptly referred to as 404B was not an argument of relevance that was made before the district court. Thank you very much. Thank you, counsel. We'll take the matter under advisement.